OPINION
{¶ 1} Officer Kaselak of the Ashtabula Police Department was on patrol on the evening of June 24, 2001. As he drove by 3517 Station Avenue ("the residence"), he saw people duck into the shadows. Officer Kaselak radioed Officer Cleveland and told him that he had observed narcotics activity in front of 3517 Station Avenue. Officer Kaselak, Officer Cleveland, and Officer Tulino met and formulated a plan to investigate the activity observed by Officer Kaselak. Officer Kaselak was to continue his patrol while Officers Cleveland and Tulino approached the residence on foot from the rear.
 {¶ 2} As Officers Cleveland and Tulino approached the residence they observed appellant, Joseph Schmeisser, walking very quickly and purposefully from the front of the residence to the rear of the residence. Officer Cleveland testified that appellant looked over his shoulder and back toward the front of the house a couple of times as he walked.
 {¶ 3} Officer Cleveland told appellant to step over to him and Officer Tulino and to put his hands on a parked vehicle so that Officer Cleveland could conduct a pat down search of appellant's outer clothing for weapons. Appellant initially seemed to comply but before he placed his hands on the parked vehicle, appellant fled.
 {¶ 4} A foot pursuit ensued until appellant ran to a point where a stockade fence blocked appellant's path. At this time Officer Cleveland observed appellant reach into his pocket, pull out a plastic bag, and throw it over an adjoining chain-link fence.
 {¶ 5} Officer Cleveland took appellant into custody and retrieved the bag. Officers found that the bag contained another plastic bag, which contained crack cocaine, a pill bottle that contained crack cocaine, and a razor blade. Officers also found appellant to have a pager and over $400.00 in cash on his person.
 {¶ 6} Appellant was indicted for possession of cocaine with specification and possession of criminal tools for felony purposes. Subsequently, appellant moved to suppress the stop and all evidence obtained as a result of the stop. The trial court denied appellant's motion.
 {¶ 7} A jury trial resulted in appellant's conviction for possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(c), a felony of the third degree, and possession of criminal tools for felony purpose in violation of R.C. 2923.24(A), a felony of the fifth degree. The trial court sentenced appellant to a definite term of three years on the former charge and a definite term of ten months on the latter. Appellant appeals his convictions and sentences raising four assignments of error:
 {¶ 8} "[1.] The trial court erred in denying [appellant's] motion to suppress evidence.
 {¶ 9} "[2.] The trial court erred by failing to make a finding on the record that would rebut the presumption of a minimum prison term.
 {¶ 10} "[3.] [Appellant] was denied his constitutional right to a fair trial because of prosecutorial misconduct which caused substantial prejudice to [appellant].
 {¶ 11} "[4.] [Appellant] was denied his constitutional right to effective assistance of counsel when his attorney failed to protect his rights at and subsequent to trial."
 {¶ 12} We affirm in part, reverse in part and remand.
 {¶ 13} In his first assignment of error, appellant contends that the officers lacked the reasonable suspicion necessary to justify his stop and frisk. We disagree.
 {¶ 14} The Fourth Amendment to the Unites States Constitution provides in relevant part that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *. Appellant maintains that he was seized prior to the foot pursuit in violation of the Fourth Amendment.
 {¶ 15} It is well settled that a police officer may stop, i.e., seize, a person if the officer has reasonable suspicion that the person has been or is about to be involved in criminal activity. Terry v. Ohio
(1968), 392 U.S. 1. In determining whether the officer had reasonable suspicion to justify the seizure, the court must consider the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177 at paragraph one of the syllabus. This means that the police officer:
 {¶ 16} "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?'"
 {¶ 17} Id. at 178-79 quoting Terry, supra at 19-20.
 {¶ 18} The Supreme Court of Ohio also confirmed that, "the circumstances surrounding the [seizure] must be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." Id. at 179.
 {¶ 19} The factors we are to consider in determining whether the officer had reasonable suspicion to justify the stop in this case are: (1) the police officer's knowledge that the area in which the stop occurred was one of heavy drug activity; (2) the time of day of the stop; (3) the officer's experience; (4) the officer's knowledge of how drug transactions occur in the area; (5) the officer's observation of the suspect engaging in suspicious behavior; (6) the officer's experience in recovering drugs or weapons when that type of behavior has been observed; and (7) whether the officer was out of his vehicle and away from protection if the Defendant had been armed. Bobo, supra at 179-81.
 {¶ 20} Applying these factors to the instant case, it is clear that Officer Cleveland had reasonable suspicion to stop appellant. Officer Cleveland testified that the incident occurred in a high drug activity area. Specifically, he testified that he had been involved in a SWAT raid at 3517 Station Avenue and had made numerous drug arrests in the area. The stop occurred at approximately 12:11 a.m. Officer Cleveland had worked as a police officer for approximately four years and had been trained in drug interdiction. He testified that he had conducted numerous field interviews of suspected narcotics activity in the area. Thus, he was familiar with how drug transactions occur in the area. Officer Cleveland observed appellant walking quickly away from the front of the house and looking over his shoulder. Officer Cleveland testified that it was obvious that appellant was concerned about something behind him. Further, Officer Cleveland was on foot at the time he approached appellant. Viewing these facts through the eyes of a reasonable police officer, there was reasonable suspicion to justify appellant's stop.[1]
 {¶ 21} Since we have determined that the stop was proper, we must determine whether the frisk of appellant was constitutionally permissible.[2] A police officer may conduct a protective frisk of a detainee where the officer has reason to believe that he is dealing with an armed and dangerous individual. Terry, supra, at 27. The officer need not be certain that the person is armed. Id. The test is whether a reasonably prudent man in the circumstances would be justified in the belief that his safety or that of others was in danger. Id.
 {¶ 22} The Ohio Supreme Court has held that, "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed."State v. Evans (1993), 67 Ohio St.3d 405, 413. See, also, United Statesv. Sakyi (4th Cir. 1998), 160 F.3d 164, at 169 recognizing a per se rule approving protective frisks when the detainee is suspected of drug activity. Given the quick approach of appellant and that the incident occurred late at night in a poorly lit area known for drug activity, the officer had reasonable suspicion to believe appellant was armed. Therefore, the frisk was constitutionally permissible. Appellant's first assignment of error lacks merit.
 {¶ 23} In his second assignment of error appellant contends that, "[t]he trial court was required to impose the minimum sentence * * * in the absence of a finding that would rebut the statutory presumption."
 {¶ 24} Appellant was found guilty of possession of cocaine with specification, in violation of R.C. 2925.11(A)(C)(4)(c), a felony of the third degree; and possession of criminal tools for felony purposes in violation of R.C. 2923.24(A), a felony of the fifth degree. The trial court sentenced appellant to a definite term of three years on the former and a definite term of ten months on the latter.
 {¶ 25} R.C. 2929.14(A)(3) provides for a definite sentence of one, two, three, four, or five years for conviction of a third degree felony. R.C. 2929.14(A)(5) provides for a prison term of six, seven, eight, nine, ten, eleven, or twelve months for conviction of a fifth degree felony. R.C. 2929.14(B) provides in relevant part:
 {¶ 26} "if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense * * * unless one or more of the following applies:
 {¶ 27} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term,
 {¶ 28} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 29} In the instant case, the trial court did not impose the shortest prison term authorized for the offense on either count. Therefore, the trial court was required to find on the record that either R.C. 2929.14(B)(1), R.C. 2929.14(B)(2), or both applied.
 {¶ 30} In State v. Edmonson (1999), 86 Ohio St.3d 324, the Supreme Court of Ohio interpreted the phrase "finds on the record" as used in R.C. 2929.14(B). The court construed this phrase to mean that:
 {¶ 31} "* * * unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Id. at 326.
 {¶ 32} Thus, "the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Id. Applying Edmonson we have held that, "so long as the trial court makes the required finding on the record, it does not matter whether it is made in the sentencing entry or during the sentencing hearing itself." State v. Jaryga (Dec. 28, 2001), 11th Dist. No. 99-L-179, 2001 Ohio App. LEXIS 6002, at 13.
 {¶ 33} In the instant case the trial court found, and the state concedes, that R.C. 2929.14(B)(1) does not apply. Further, neither the sentencing entry nor the transcript of the sentencing hearing evidence a finding that the shortest prison term would demean the seriousness of appellant's conduct, or fail to adequately protect the public under R.C.2929.14(B)(2). Therefore, the trial court failed to make the requisite findings to impose more than the shortest prison term. Appellant's second assignment of error has merit.
 {¶ 34} In his third assignment of error appellant points to several instances in the record that he claims demonstrate prosecutorial misconduct, which deprived him of his right to a fair trial. We find no error.
 {¶ 35} Appellant initially argues that, "[i]t was improper for the prosecuting attorney to make comments designed to mislead and prejudice the jurors against the defendant during voir dire." Specifically, appellant argues that the prosecutor improperly implied that appellant was a crack addict in need of treatment or a wake-up call, and that the evidence of guilt would be overwhelming. Appellant bases his argument on the following exchange during voir dire:
 {¶ 36} "[Prosecutor] * * * Anybody here either work, in your capacity somewhere along the line with people who have been substance abusers, users or maybe personal experience that somebody in your family, a friend, a co-worker, acquaintance who has used illegal substances or abused illegal substances that you know, obviously, have some knowledge of and experience? Anything of that nature?
 {¶ 37} "* * *
 {¶ 38} "[Prospective Juror] Yes, personally one of our children, one of our sons is, I assume, still addicted. We have not heard from him for seven years, and when we last saw him he was still addicted.
 {¶ 39} "[Prosecutor] Was it specifically cocaine or crack cocaine?
 {¶ 40} "[Prospective Juror] Yes.
 {¶ 41} "[Prosecutor] You said you haven't heard from him in seven years?
 {¶ 42} "[Prospective Juror] Right.
 {¶ 43} "[Prosecutor] Is there anything about that experience that may prevent you from being fair and impartial to both sides?
 {¶ 44} "[Prospective Juror] Yes.
 {¶ 45} "[Prosecutor] And what is that?
 {¶ 46} "[Prospective Juror] As we were trying to learn about cocaine as parents and addict, just some of the things he taught us and the way they feel and what it does to them and why it was so hard for him to stay clean. He would have periods where he would be clean and not — and it just is devastating.
 {¶ 47} "[Prosecutor] Was he ever arrested?
 {¶ 48} "[Prospective Juror] Not for cocaine, unfortunately. If he was high, they would plead down or however they say it to driving with suspended license. He never actually had a conviction, as far as I know, before he disappeared on a drug charge.
 {¶ 49} "[Prosecutor] Do you think that may have been a wake-up call had he been?
 {¶ 50} "[Prospective Juror] Well, he had several.
 {¶ 51} "[Prosecutor} I guess, do you feel like with your son sometimes they have to hit rock bottom?
 {¶ 52} "[Prospective Juror] It's just an emotional issue when it hits home. Very, very —
 {¶ 53} "[Prosecutor] When you say you don't feel you can be fair to both sides, I guess, is it because of the nature? Obviously, you dealt with this in your personal life.
 {¶ 54} "[Prospective Juror] It's the mother in me and that's just the honest truth. At this point, that's where I am with it.
 {¶ 55} "[Prosecutor] Do you feel that even no matter how overwhelming the evidence would be you couldn't convict because of your personal experience?
 {¶ 56} "[Prospective Juror] Couldn't convict are you saying?
 {¶ 57} "[Prosecutor] I guess, I'm just trying to understand exactly what you mean by why you can't be fair to both sides.
 {¶ 58} "[Prospective Juror] I guess, it's kind of hard to explain then. Just everything involved with it just gives a negative connotation to me in that mother in me and I'm not promising that I could be. I would hate for anyone to — their life [sic] be changed because I have a personal bad experience with anything, drugs or whatever. I just don't feel comfortable being able to set mother aside."
 {¶ 59} Appellant's trial counsel failed to object to this colloquy, therefore, we review the record only for plain error. State v.Joseph (1995), 73 Ohio St.3d 450, 455. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." Id.
 {¶ 60} In State v. Barnes (2002), 94 Ohio St.3d 21, 27, the Supreme Court of Ohio noted that the plain error rule places three limitations on our decision to correct plain error. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. This means the error must be an `obvious' defect in the trial proceedings. Third, the error must have affected `substantial rights.' The court interpreted this to mean that the error must have affected the outcome of the trial. Even if these three prongs are met, we are not required to correct the error. The Ohio Supreme Court acknowledged the discretionary nature of Crim.R. 52(B) by cautioning courts to notice plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id. See, also, Statev. Heller (March 5, 2002), 10th Dist. No. 01AP-648, 2002-Ohio-879 at ¶ 18.
 {¶ 61} In the instant case, we cannot say that the prosecutor's questioning of the prospective juror amounted to plain error. The questions were designed to elicit information from the prospective juror so that a determination could be made as to whether this prospective juror, given her experiences, could render a fair and impartial verdict based on the evidence. The prospective juror candidly admitted she could not.
 {¶ 62} "The purpose of the voir dire is to empanel a fair and impartial jury." State v. Twyford (2002), 94 Ohio St.3d 340, 346. The voir dire in the instant case served it purpose as the trial court excused this person for cause. Nothing in the record leads us to believe that the outcome of the trial would have been different, but for the prosecutor's voir dire of this prospective juror. Appellant's argument is without merit.
 {¶ 63} Appellant next argues that, "[i]t was improper for the prosecuting attorney to make statements designed to provide clearly inadmissible evidence to the jurors." Here, appellant argues that the prosecutor made improper references to his previous contact with the Youth Detention Center. We disagree.
 {¶ 64} Upon his arrest appellant gave his name as Eugene Greenlaw, Jr., and told officers that he was fifteen years old. Based on this information appellant was sent to the Youth Detention Center. During cross-examination the following exchange took place:
 {¶ 65} "[Prosecutor] Mr. Schmeisser, isn't it true that they did fingerprint you at the police station, correct?
 {¶ 66} "[Appellant] Correct.
 {¶ 67} "[Prosecutor] You went to YDC. As a matter of fact, employees at the Youth Detention Center recognized you —
 {¶ 68} "[Appellant] Yeah, they did.
 {¶ 69} "[Prosecutor] — from when you were little?
 {¶ 70} "[Appellant] Uh-huh."
 {¶ 71} Appellant's counsel then entered an objection, which the trial court sustained. The trial court also instructed the jury to disregard the testimony. Appellant contends that this exchange denied appellant his right to a fair trial by improperly referencing appellant's juvenile record.
 {¶ 72} Evid. R. 609(D) prohibits the use of a juvenile adjudication to attack the credibility of a witness. While the testimony elicited was improper, nothing in the record indicates a scheme on the part of the state to elicit this testimony. Further, the trial court immediately sustained appellant's objection, struck the testimony, and admonished the jury to disregard it. Therefore, any error was harmless beyond a reasonable doubt. State v Sarli (March 3, 1988), 8th Dist. No. 53506, 1988 Ohio App. LEXIS 694, at 16.
 {¶ 73} Appellant next argues that, "[i]t was improper for the prosecuting attorney to vouch for the credibility of her witnesses during closing argument." Here, appellant refers to the following remarks of the prosecutor:
 {¶ 74} "Ladies and gentleman, you heard from Patrolman Cleveland of what actually happened. You heard from Patrolman Tulino as to what actually happened * * *."
 {¶ 75} "* * * I am very proud of Patrolman Cleveland and the job that they did in this * * *."
 {¶ 76} Again, appellant's counsel failed to object to these remarks so we review them only for plain error. Joseph, supra.
 {¶ 77} Prosecutors should avoid expressing their personal beliefs or opinions with respect to the guilt of the accused. State v. Henderson
(Sept. 29, 2000), 11th Dist. No. 99-T-0001, 2000 Ohio App. LEXIS 4579, at 10. However, it is not improper for a prosecutor to comment fairly on a witness' credibility based upon his in court testimony. Id. citing Statev. Keene (1998), 81 Ohio St.3d 646, 666 (holding that prosecutor's description of a witness as "one of the best witnesses any of us has seen in quite a while" was properly supported by the record).
 {¶ 78} Here, appellant contended at trial that police officers had planted evidence and lied about the sequence of events leading to his arrest. Thus, the credibility of the witnesses was clearly at issue. The prosecutor's comments, while perhaps close to the line, are fair inferences from the testimony elicited at trial. Therefore, we cannot say that these comments so tainted the proceedings as to deprive appellant of a fair trial.
 {¶ 79} Appellant next contends that "[i]t was improper for the prosecuting attorney to relate numerous unsubstantiated allegations regarding the defendant during sentencing." Our disposition of appellant's second assignment of error renders this argument moot.
 {¶ 80} In his final assignment of error appellant argues that, "[i]t constituted ineffective assistance of counsel when defense counsel failed to object to numerous instances of prosecutorial misconduct which were committed throughout the trial and at sentencing." Appellant bases his argument on his trial counsel's failure to object to the instances of alleged prosecutorial misconduct discussed above.
 {¶ 81} In reviewing an ineffective assistance claim, the benchmark is, "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984), 466 U.S. 668,686. To prevail on a claim of ineffective assistance, appellant must show that his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment." Id. at 687. Appellant must also show prejudice resulting from the deficient performance. Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Appellant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We presume that counsel's conduct was within the wide range of reasonable professional assistance. Id. See, also, State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 82} We need not address the two prongs of appellant's ineffective assistance claim in the order set forth in Strickland .
 {¶ 83} "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, supra at 699.
 {¶ 84} In the instant case, appellant has not demonstrated that he suffered any prejudice from his trial counsel's performance. Trial counsel's decision not to object during voir dire did not result in prejudice because the prospective juror was excused for cause and the prosecutor's questions were proper as they sought to determine whether the prospective juror could render a fair and impartial verdict.
 {¶ 85} Appellant's counsel's failure to object to the prosecutor's statements during close did not result in prejudice to appellant. They were based on fair inferences from the trial testimony.
 {¶ 86} Finally, our disposition of appellant's second assignment of error renders any issue concerning trial counsel's failure to object during sentencing moot.
 {¶ 87} The decision of the trial court is affirmed in part, reversed in part and remanded to the Ashtabula Court of Common Pleas for proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., DIANE V. GRENDELL, J., concur.
[1] We would reach the same conclusion were we to determine that the stop did not occur until after the foot pursuit. See, Illinois v. Warlow
(2000), 528 U.S. 119 (holding that unprovoked flight is, in and of itself reasonable suspicion for a stop.)
[2] The record and the trial court's judgment entry on the motion to suppress leave it unclear as to whether the officer actually began to frisk appellant prior to his flight. For purposes of this appeal we will assume that the officer did begin the frisk.